**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Andre RIVERA, Appellee**

**No. 1423 EDA 2015**

Superior Court of Pennsylvania.

Submitted August 2, 2016.
FILED JANUARY 18, 2017

Nicholas J. Casenta, Jr., Assistant District Attorney, West Chester, for Commonwealth, appellant.

Robert P. Brendza, Landenberg, for appellee.

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, J., PANELLA, J., SHOGAN, J., LAZARUS, J., OLSON, J., and OTT, J.

OPINION BY OTT, J.:

The Commonwealth appeals from the order entered May 8, 2015, in the Chester County Court of Common Pleas granting Andre Rivera's petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"),[1] and reinstating Rivera's post-sentence motion and direct appeal rights *nunc pro tunc*. Rivera sought relief from the judgment of sentence of an aggregate term of four and one-half to nine years' imprisonment imposed on January 23, 2014, following his negotiated guilty plea to three counts of possession with intent to deliver ("PWID") heroin and one count of possession of marijuana.[2] On appeal, the Commonwealth contends the PCRA court erred in reinstating Rivera's post-sentence and direct appeal rights based upon trial counsel's failure to consult with Rivera as to whether or not he wished to file a direct appeal. For the reasons below, we affirm.

The relevant facts and procedural history underlying this appeal are as follows. At Docket No. 1917–2013, Rivera was charged with three counts each of PWID (heroin), possession of heroin, possession of drug paraphernalia, and criminal use of a communication facility,[3] after he sold heroin to a confidential informant on three occasions in August and October of 2012. The last controlled buy was for 2.1 grams of heroin. At Docket No. 1918–2013, Rivera was charged with one count each of PWID (marijuana), possession of marijuana and possession of drug paraphernalia, when he was searched incident to arrest, on March 3, 2013, for the crimes at Docket No. 1917–2013.

On January 23, 2014, Rivera entered a negotiated guilty in both cases. At Docket No. 1917–2013, he pled guilty to three counts of PWID (heroin), and, at Docket No. 1918–2013, he pled guilty to one count of possession of marijuana. In accordance with the terms of the negotiated agreement, the trial court imposed the following sentence. At Docket No. 1917–2013, the court sentenced Rivera to: (1) a mandatory minimum term of three to six years'

---

1. 42 Pa.C.S. §§ 9541–9546.

2. 35 P.S. §§ 780–113(a)(30) and (16).

3. *See* 35 P.S. §§ 780–113(a)(30), (16), and (32), and 18 Pa.C.S. § 7512, respectively.

imprisonment for the charge of PWID of 2.1 grams of heroin pursuant to 18 Pa.C.S. § 7508(a)(7)(i);[4] (2) a consecutive term of 18 to 36 months' imprisonment for a second count of PWID, and (3) a concurrent term of 18 to 36 months' imprisonment for the third count of PWID. At Docket No. 1918–2013, the court imposed a concurrent term of 12 months' probation for possession of marijuana. Accordingly, the aggregate sentence imposed was a term of four and one-half to nine years' imprisonment. No post-sentence motion or direct appeal was filed.

On November 18, 2014, Rivera wrote a letter to the trial court expressing his desire to appeal his sentence. *See* Letter, 11/18/2014. The court treated Rivera's letter as a timely-filed PCRA petition, and entered an order appointing counsel to represent him. Nonetheless, on December 10, 2014, Rivera filed a *pro se* petition, asserting his mandatory minimum sentence was illegal pursuant to *Alleyne v. United States*, — U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (U.S. 2013),[5] and plea counsel was ineffective for advising him to enter a guilty plea and for failing to file a direct appeal. Thereafter, on January 30, 2015, appointed counsel filed a petition to withdraw and accompanying *Tur-ner/Finley*[6] "no merit" letter. Counsel asserted *Alleyne* was inapplicable because Rivera entered a guilty plea and admitted the facts that enhanced his sentence. *See* "No Merit" Letter, 1/20/2015, at 2. Nevertheless, the PCRA court scheduled an evidentiary hearing, limited to the following issue:

> [W]hether plea counsel was ineffective for allegedly advising [Rivera] to plead guilty to facts permitting the imposition of a mandatory minimum in order to avoid the potential for more mandatory minimums that may not have been constitutional to impose under *Alleyne* … in the absence of admitted facts, i.e., in the event [Rivera] exercised his right to a jury or bench trial instead of tendering a plea.

Order, 2/11/2015. Thereafter, on February 17, 2015, Rivera filed a *pro se* objection to counsel's "no merit" letter, again claiming plea counsel was ineffective for "advising [him] to plead to an unlawful mandatory minimum sentence" in light of *Alleyne*, and for failing to file a direct appeal. *See* Objections to No–Merit Letter, 2/17/2015, at 1. In response, the PCRA court entered an order on February 19, 2015, directing, in relevant part: "[I]n addition to the issue specified in our previous Order dated Feb-

---

**4.** *See id.* (mandatory minimum sentence of three years' imprisonment for PWID of at least two, but less than 10, grams of heroin and prior drug trafficking conviction).

**5.** In *Alleyne*, the United States Supreme Court held "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne, supra*, 133 S.Ct. at 2155. In interpreting that decision, the courts of this Commonwealth have determined that most of our mandatory minimum sentencing statutes are unconstitutional because the language of those statutes "permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence"

standard. *Commonwealth v. Newman*, 99 A.3d 86, 98 (Pa. Super. 2014) (*en banc*) (invalidating 42 Pa.C.S. § 9712.1), *appeal denied*, 121 A.3d 496 (Pa. 2015); *Commonwealth v. Vargas*, 108 A.3d 858 (Pa. Super. 2014) (*en banc*), (invalidating 18 Pa.C.S. § 7508), *appeal denied*, 121 A.3d 496 (Pa. 2015). Further, our courts have held that the unconstitutional provisions of the mandatory minimum statutes are not severable from the statute as a whole. *Commonwealth v. Hopkins*, 117 A.3d 247, 262 (Pa. 2015); *Newman, supra*, 99 A.3d at 101.

**6.** *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988) (*en banc*).

ruary 11, 2015, the parties shall also litigate at the scheduled [PCRA] hearing the issue of whether plea counsel was ineffective for failing to file a direct appeal on behalf of [Rivera]." Order, 2/19/2015.

The PCRA court conducted an evidentiary hearing on April 15, 2015. Thereafter, on May 7, 2015, the court entered an order granting Rivera PCRA relief. Specifically, the court found plea counsel was ineffective for failing to consult, *sua sponte*, with Rivera regarding whether he wished to file a direct appeal. *See* Order 5/7/2015, at n.1. Accordingly, the PCRA court reinstated Rivera's post-sentence and direct appeal rights *nunc pro tunc*. The court explained it reinstated Rivera's post-sentence rights because of "the nature of the non-frivolous issue that [Rivera] raises and the fact that [Rivera's] sentence was the product of a negotiated plea[.]" Order, 5/7/2015 at n.1. This timely Commonwealth appeal followed.[7]

The Commonwealth frames the issue on review as follows:

> Whether the [PCRA] court erred in granting [Rivera's] PCRA petition by reinstating the right to file a post-sentence motion and direct appeal *nunc pro tunc* where [Rivera] pled guilty and received an agreed upon sentence?

Commonwealth's Brief at 5.

### THE PCRA COURT'S DECISION:

Before we address the Commonwealth's argument, by way of background, we must first summarize the PCRA court's findings with respect to all of the claims raised in Rivera's petition. First, the court concluded Rivera failed to establish plea counsel was ineffective for advising him to enter a guilty plea that included a Section 7508

mandatory minimum sentence. PCRA Court Opinion, 6/23/2015, at 7. Despite the fact the *Alleyne* decision had been filed seven months earlier, plea counsel testified at the evidentiary hearing it was her understanding *Alleyne* "didn't apply" since the "state of the law in Pennsylvania at the time [Rivera entered his plea] was that the mandatory minimums were still in effect." N.T., 4/15/2015, at 33–34. Likewise, the PCRA court explained:

> [A]t the time [Rivera] was sentenced on January 23, 2014 and throughout the period available to him to seek direct review, no appellate court had yet declared 18 Pa.C.S.A. § 7508 unconstitutional in its entirety and incapable of severance; thus, pleading to a mandatory sentence under that section was still a viable option in this Commonwealth.

PCRA Court Opinion, 6/23/2015, at 7.

The PCRA court also emphasized the benefit Rivera received by accepting the plea agreement. In exchange for his guilty plea to three counts of PWID and one count of possession of marijuana, the Commonwealth withdrew **eleven** other charges. *See id.* at 7. Moreover, although the plea agreement included the aforementioned mandatory minimum sentence, the court observed "it saved [Rivera] from potential consecutive sentences, if convicted on all fifteen charges at trial, that would have far exceeded the four and one-half (4½) to nine (9) years he received as a result of the plea." *Id.* at 8. Indeed, the three PWID heroin charges alone each carried a statutory maximum sentence of 30 years' imprisonment. *See id.* Accordingly, the PCRA court found because Rivera could legally enter a plea that included a Section

---

7. On May 13, 2015, the PCRA court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied with the court's directive, and filed a concise statement on May 28, 2015. This Court subsequently certified the appeal for *en banc* review, *sua sponte*, on January 13, 2016.

7508 mandatory minimum sentence at the time of his colloquy, and counsel had a reasonable basis for advising Rivera to accept the plea offered, Rivera failed to demonstrate plea counsel was ineffective. *See id.* at 8–9.

The PCRA court also found Rivera failed to establish counsel was ineffective for neglecting to file a **requested** direct appeal. *See id.* at 9. Rivera claimed he sent a letter to counsel less than a week after entering his plea, requesting she file a motion to modify his sentence and an appeal. *See* N.T., 4/15/2015, at 13. He also introduced into evidence a copy of that purported letter. *See id.* However, counsel testified she never received the letter, and that if she had, she would have "[a]bsolutely" contacted Rivera to discuss his options. *Id.* at 31. The PCRA court found Rivera failed to demonstrate he mailed the purported letter to counsel, and credited counsel's testimony that she never received a letter directing her to file an appeal. *See* PCRA Court Opinion, 6/23/2015, at 9. Consequently, the court concluded Rivera failed to demonstrate counsel disregarded his request to file a direct appeal.

Nevertheless, the PCRA court found Rivera's constitutional rights were violated "by plea counsel's failure to consult, *sua sponte* with [Rivera] regarding whether he wished to file a direct appeal because there was a non-frivolous issue that [he] could have raised regarding the constitutionality of his plea under *Alleyne, supra*." *Id.* at 10. Although no Pennsylvania court had invalidated Section 7508 before Rivera's direct appeal time period had expired, the PCRA court explained:

> It cannot be gainsaid, in the light of the the quickly developing history of ensuing appellate decisional law on the constitutionality of mandatory minimums after *Alleyne, supra* that a challenge to the imposition of the mandatory mini-

mum in section 7508 of the Crimes Code in the context of a plea bargain would have arguable legal merit.

*Id.* at 11. Further, the court emphasized it was not "holding counsel responsible for failing to anticipate a change in the law," but rather, "[t]he writing, so to speak, was already on the wall." *Id.* at 12. The PCRA court summarized its ruling as follows:

> The basis for our decision is a narrow one; it is not the underlying merit of [Rivera's] legality of sentence claim, but it is only the efficacy of counsel's stewardship in connection with her post-sentence responsibilities towards [Rivera]. The grievance is one relating to the compromise of [Rivera's] direct appeal rights, not whether [Rivera's] non-frivolous issue concerning the constitutionality of the application by the Commonwealth of a "constitutionally infirm" mandatory minimum to induce a guilty plea by [Rivera] is or should be declared right or wrong.

*Id.* at 12–13. In addition, the court also (1) restored Rivera's right to file a post-sentence motion, "[b]ecause some issues that he may want to raise, such as a motion to withdraw his guilty plea, are dependent upon their preservation in the lower court[;]" and (2) refused to unilaterally reduce Rivera's sentence because it was the product of a negotiated plea agreement, the terms of which were agreed to, and relied upon, by both parties. *Id.* at 13–14. With this background in mind, we proceed to an examination of the Commonwealth's argument on appeal.

## COMMONWEALTH'S ARGUMENT

The Commonwealth contends the PCRA court erred in restoring Rivera's post-sentence and direct appeal rights *nunc pro tunc* because Rivera knowingly and voluntarily entered a negotiated guilty plea. Specifically, it asserts the court's determi-

nation that counsel had a duty to consult with Rivera, *sua sponte*, about the filing of a direct appeal, conflicts with the court's concomitant finding that counsel had a reasonable basis for advising Rivera to accept the plea agreement.[8] *See* Commonwealth's Brief at 27. Indeed, the Commonwealth emphasizes there was no change in the law regarding the effect of *Alleyne* on Pennsylvania's mandatory minimum sentencing statutes during the 30–day period between the imposition of Rivera's sentence and the expiration of the time period for filing a direct appeal. *See id.*

Further, the Commonwealth insists Rivera cannot challenge his negotiated sentence where, as here, he received "the sentence bargained for." *Id.* at 31. It asserts: "There is no authority to permit a challenge to the discretionary aspects of a sentence, where there is a plea agreement, which contains a negotiated sentence, which is accepted and imposed by the sentencing court." *Id.* at 30. Rather, Rivera's only opportunity for relief was to seek to withdraw his guilty plea, which, the Commonwealth notes, is limited to "challenges to voluntariness, jurisdiction of the court, and the lawfulness of the sentence." *Id.* at 28–29. Moreover, the Commonwealth contends all of those issues could "be all litigated within the context of a PCRA petition without the need to file a post-sentence motion and/or direct appeal *nunc pro tunc.*" *Id.* at 29.

With regard to the PCRA court's specific finding that plea counsel had a duty to consult with Rivera, the Commonwealth maintains Rivera's only objective was to reduce his negotiated sentence, and, under the relevant case law, a court should consider "whether the defendant received the sentence bargained for as part of the plea[.]" *Id.* at 31, 34, *citing Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), and *Commonwealth v. Maynard*, 900 A.2d 395 (Pa. Super. 2006). Because Rivera did so in the present case, the Commonwealth argues counsel was not required to perform what would have been "a useless act." *Id.* at 31.

Moreover, the Commonwealth maintains the PCRA court's ruling improperly imposes upon counsel a duty to anticipate a change in the law. *See id.* at 42. Indeed, early decisions of this Court applying *Alleyne*, did not address the severability of the mandatory minimum statutes, and found no constitutional violation if the facts necessary to establish the application of the mandatory minimum sentence were either determined by a jury or stipulated to by the defendant. *See id.* at 39–41, *citing Commonwealth v. Munday*, 78 A.3d 661, 666 (Pa. Super. 2013) (declining to address, *sua sponte*, whether mandatory minimum statute at 42 Pa.C.S. § 9712.1 was facially invalid in light of *Alleyne* ); *Commonwealth v. Watley*, 81 A.3d 108, 120–121 (Pa. Super. 2013) (*en banc* ) (finding no *Alleyne* violation when jury convicted defendant of firearms charges, which established facts necessary for application of mandatory minimum), *appeal denied*, 626 Pa. 684, 95 A.3d 277 (2014); *Commonwealth v. Tobin*, 89 A.3d 663, 665 n.1 (Pa. Super. 2014) (commenting that *Alleyne* did not invalidate defendant's mandatory minimum sentence because defendant "pled guilty and admitted to possession of twenty marijuana plants"); *Commonwealth v. Matteson*, 96 A.3d 1064, 1066 (Pa. Super.

---

8. The Commonwealth asks:

 If trial counsel had a reasonable basis for recommending the plea agreement to defendant, which defendant accepted, why would trial counsel have a constitutional duty to *sua sponte* consult with defendant about the filing of a direct appeal from his agreed upon sentence?

Commonwealth's Brief at 27.

2014) (finding no violation of *Alleyne* when the jury found beyond a reasonable doubt the triggering fact for imposition of mandatory minimum by virtue of the crime charge, that is, victim was under age of 13). The Commonwealth summarizes:

> [A]t the time of [Rivera's] plea and sentencing, and for a period of time thereafter, there was Superior Court and other authority that if the facts implicating the mandatory sentence were the result of a plea agreement or submitted to the jury there was no *Alleyne* issue.
>
> . . . .
>
> Counsel cannot be deemed ineffective for failing to anticipate a change or development in the law.

Commonwealth's Brief at 42.

Finally, the Commonwealth contends this Court's recent decision in *Commonwealth v. Melendez–Negron*, 123 A.3d 1087 (Pa. Super. 2015), is not controlling because it is "inconsistent" with prior cases cited above.[9] Commonwealth's Brief at 45. Moreover, it insists that, unlike here, the prejudice the defendant suffered in *Melendez–Negron* was apparent, since the mandatory minimum sentence he received was "double the aggravated range sentence" he would have faced had a mandatory minimum provision not been applied.[10] *Id.* at 44, citing *Melendez–Negron, supra*, 123 A.3d at 1091.

Accordingly, the Commonwealth argues the PCRA court erred in granting Rivera PCRA relief by reinstating both his post-sentence and direct appeal rights *nunc pro tunc.*

## ANALYSIS

 We begin our analysis of the Commonwealth's argument with our standard of review. When reviewing an order granting PCRA relief, we must "determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error." *Melendez–Negron, supra*, 123 A.3d at 1090 (citation omitted). Moreover, we will not disturb the findings of the PCRA court unless those findings have no support in the certified record. *Id.* (citation omitted).

The PCRA court's ruling is based upon trial counsel's failure to consult with Rivera regarding whether Rivera wanted to file a direct appeal. In *Roe v. Flores–Ortega, supra*, the United States Supreme Court considered trial counsel's duty in those cases where a defendant does not clearly convey to counsel whether or not he wishes to file a direct appeal. *Id.* at 477, 120 S.Ct. 1029. The Court held:

> [C]ounsel has a constitutionally imposed duty to **consult** with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the informa-

---

9. In that case, a panel of this Court determined plea counsel was ineffective for advising the defendant to accept a plea offer that incorporated one of the unconstitutional mandatory minimum sentences. *Melendez–Negron, supra*, 123 A.3d at 1091.

10. Conversely, in the present case, Rivera's aggravated range sentence for the PWID charge of 2.1 grams of heroin was 36 months' imprisonment, the same as the mandatory minimum imposed. *See* Guideline Sentence Form, 1/24/2014, PWID 2.1 grams. If the trial court had then imposed consecutive sentences in the standard range for the remaining two PWID convictions, Rivera would have faced, at least, a seven to 14 year sentence. *See* Guideline Sentence Form, 1/24/2014, PWID 0.56 grams and 0.24 grams.

tion counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 480, 120 S.Ct. 1029 (emphasis supplied). Further, the *Flores–Ortega* Court also held that in order to satisfy the prejudice prong of the ineffectiveness test, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484, 120 S.Ct. 1029. *See Commonwealth v. Touw*, 781 A.2d 1250, 1254–1255 (Pa. Super. 2001) (applying *Flores–Ortega* and finding (1) counsel's discussions with defendant's parents regarding futility of appeal did not satisfy counsel's duty to consult with defendant, and (2) counsel's belief that appeal would "not likely" result in reduced sentence was irrelevant when counsel believed court misapplied sentencing guidelines; remanding for credibility determination as to whether defendant would have timely appealed "but for counsel's failure to consult.").

Here, as noted above, the PCRA court concluded plea counsel was ineffective for failing to consult with Rivera regarding whether he wished to appeal the non-frivolous issue concerning the legality of his negotiated sentence. *See* PCRA Court Opinion, 6/23/2015, at 10. The Commonwealth first argues this holding conflicts with the PCRA court's concomitant finding that trial counsel was not ineffective for advising Rivera to accept the plea offer. We disagree.

It is undisputed *Alleyne* was decided seven months before Rivera entered his guilty plea. However, as the Commonwealth points out, in early decisions interpreting *Alleyne*, this Court found "if the facts implicating the mandatory sentence were the result of a plea agreement or submitted to the jury there was no *Alleyne* issue." Commonwealth's Brief at 42. *See Tobin, supra; Matteson, supra.*

Indeed, it was not until our decision in *Newman, supra,* filed in August of 2014, that an *en banc* panel held Pennsylvania's mandatory minimum sentencing statutes, which permitted a trial court to increase a defendant's minimum sentence based upon a preponderance of the evidence standard, were unconstitutional under *Alleyne* and incapable of severance. After *Newman*, this Court consistently rejected any harmless error analysis that attempted to circumvent the plain language of the statutes. *See Commonwealth v. Valentine*, 101 A.3d 801, 811 (Pa. Super. 2014) (rejecting argument that submitting factual prerequisite of mandatory minimum statute to the jury would satisfy *Alleyne*; "[b]y asking the jury to determine whether the factual prerequisites ... had been met, the trial court effectively determined that the unconstitutional provisions [of the statutes] were severable."), *appeal denied*, 124 A.3d 309 (Pa. 2015); *Commonwealth v. Fennell*, 105 A.3d 13, 20 (Pa. Super. 2014) (rejecting argument that defendant's stipu-

lation to amount of drugs recovered satisfies mandate of *Alleyne*; "both *Newman* and *Valentine* unequivocally state that creating a new procedure in an effort to impose a mandatory minimum sentence is solely within the province of the legislature."), *appeal denied*, 121 A.3d 494 (Pa. 2015); *Commonwealth v. Wolfe*, 106 A.3d 800, 806 (Pa. Super. 2014) ("In our view, *Newman* abrogated this Court's decision in *Matteson*.").

Therefore, at the time Rivera entered his plea, the decisions interpreting *Alleyne* implied that Rivera could legally stipulate to the amount of drugs recovered, and agree to the imposition of the mandatory minimum sentence under Section 7508. Consequently, the PCRA court properly determined counsel had a reasonable basis for advising Rivera to accept the plea, based upon the harsher sentence Rivera would have faced had he proceeded to trial.

However, when considering whether counsel violated her duty to consult with Rivera regarding the filing of a direct appeal, our focus shifts to a determination of whether a reasonable defendant would want to appeal, that is, whether there were non-frivolous grounds for an appeal. *See Flores Ortega*, *supra*. The PCRA court concluded there were, and we agree.

There is no dispute Rivera was not aware of the *Alleyne* decision, and its possible ramifications on mandatory minimum sentencing statutes, at the time he entered his plea. Moreover, while the early decisions interpreting *Alleyne* supported the legality of his plea, the PCRA court found "[c]ertainly, a legitimate argument could reasonably have been made at the time [he] was sentenced that, due to *Alleyne*,

supra, a mandatory minimum sentence cannot be imposed even in the context of a plea bargain[.]"[11] PCRA Court Opinion, 6/23/2015, at 11. By failing to discuss the option of an appeal with Rivera and the potential ramifications of the *Alleyne* decision, trial counsel deprived him of the opportunity to appeal his guilty plea. It is important to emphasize we are not faulting counsel for failing to anticipate a change in the law. Rather, we find counsel failed to provide Rivera with all the relevant information he needed to determine whether to file a direct appeal. While counsel may have believed Rivera's sentence was not violative of *Alleyne*—which was relevant in determining whether counsel had a reasonable basis for advising Rivera to accept the plea—the *Allenye* decision presented a non-frivolous issue for appeal, particularly when counsel acknowledged Rivera was not pleased with his sentence. *See* N.T., 4/15/2015, at 29–30. Counsel's belief that an appeal would likely be unsuccessful is not the determinative factor. *See Touw, supra*. Accordingly, we conclude the PCRA court's ruling that counsel was not ineffective for failing to advise Rivera to accept the plea, does not conflict with its simultaneous ruling that counsel was ineffective for failing to consult with Rivera regarding whether he wanted to file an appeal.

■ The Commonwealth also contends Rivera is not permitted to challenge the discretionary aspects of his negotiated sentence because he received "the sentence he bargained for." Commonwealth's Brief at 31. However, it fails to recognize that Rivera's *Alleyne* argument is a challenge to the legality of his sentence. *See Newman, supra*, 99 A.3d at 90 ("[A] challenge to a

---

11. Indeed, the defendants in both *Newman* and *Fennell* appealed judgments of sentence that were imposed **before** Rivera's sentence. *See Newman, supra* (judgment of sentence imposed June 13, 2012); *Fennell, supra* (judgment of sentence imposed August 12, 2013).

sentence premised upon *Alleyne* ... implicates the legality of the sentence and cannot be waived on appeal."). *But see Commonwealth v. Barnes*, 122 A.3d 1034 (Pa. 2015) (granting appeal to consider, *inter alia*, whether an *Alleyne* claim raises a challenge to the legality of sentencing).

■ Further, with regard to the Commonwealth's assertion that Rivera can seek the relief he desires in the context of a PCRA petition, we find such an argument unavailing. In Pennsylvania, every criminal defendant has a constitutional right to file a direct appeal,[12] and while he may "relinquish his appellate rights, this can only be accomplished through a knowing, voluntary and intelligent waiver." *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564, 572 (1999). Here, Rivera could not have made a "knowing, voluntary and intelligent waiver"[13] of his direct appeal rights because counsel failed to consult with him regarding the potential illegality of his sentence. Therefore, the fact that he may be able to obtain the same relief on PCRA review is of no moment.[14]

■ Next, the Commonwealth asserts because Rivera's only objective is to reduce his negotiated sentence, and he received the sentence "he bargained for," counsel was not required to file an appeal and perform what would be "a useless act." Commonwealth's Brief at 31. In support, the Commonwealth emphasizes the following language in *Flores–Ortega*:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as **whether the defendant received the sentence bargained for as part of the plea** and whether the plea expressly reserved or waived some or all appeal rights.

*Flores–Ortega, supra*, 528 U.S. at 480, 120 S.Ct. 1029 (emphasis supplied).

---

12. Article V, Section 9 provides:

> There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

Pa. Const. art. V, § 9.

13. *Lantzy, supra*, 736 A.2d at 572.

14. Moreover, his right to relief on collateral review is far from a forgone conclusion. If Rivera seeks to withdraw his plea, the PCRA court already determined plea counsel was not ineffective for advising him to enter the plea due to the state of the law at the time of the plea, and the benefit Rivera received in sentencing. Therefore, he would not be entitled to relief under 42 Pa.C.S. § 9543(a)(2)(ii). *See id.* (PCRA relief based upon ineffective assistance of counsel). Further, under subsection (a)(2)(iii), Rivera has not asserted he is innocent of the charges. *See id.* at § 9543(a)(2)(iii) (PCRA relief based upon unlawfully induced guilty plea and petitioner plead and proves he is innocent). Moreover, if he *seeks solely to invalidate his illegal* sentence, under subsection (a)(2)(viii), we note the state of the law of *Alleyne* claims on PCRA review is in flux. *Compare Commonwealth v. Washington*, 142 A.3d 810, 820 (Pa. 2016) (holding "*Alleyne* does not apply retroactively to cases pending on collateral review"), *with Commonwealth v. Ruiz*, 131 A.3d 54, 59–60 (Pa. Super. 2015) (invalidating sentence on collateral review under *Alleyne*; *Alleyne* was not being applied retroactively because defendant's judgment of sentence was not final when *Alleyne* was decided).

Conversely, if Rivera seeks to withdraw his plea on direct appeal, he will only have to demonstrate he entered the plea unknowingly, since counsel acknowledged she did not discuss the possible ramifications of *Alleyne* with Rivera before he accepted the plea offer.

While the fact Rivera received "the sentence [he] bargained for" is certainly a legitimate consideration, the Commonwealth ignores the fact that what Rivera "bargained for" was an illegal sentence. "Our cases clearly state that a criminal defendant cannot agree to an illegal sentence, so the fact that the illegality was a term of his plea bargain is of no legal significance." *Commonwealth v. Gentry*, 101 A.3d 813, 819 (Pa. Super. 2014) (finding sentencing order which imposed $1.00 of restitution "as an interim value for Probation to determine at a later date" was illegal because 18 Pa.C.S. § 1106 mandates that restitution be imposed at sentencing; defendant's agreement to term as part of negotiated plea was of "no legal significance."); *Commonwealth v. Hodges*, 789 A.2d 764 (Pa. Super. 2002) (permitting defendant to withdraw guilty plea to first-degree murder when he only entered plea to avoid death penalty, and later established he was only 15 years old at the time of the crime so that death penalty was not a legal sentencing option; stating "the plea process has been tainted from the outset"). As discussed *supra*, at the time Rivera entered his plea, and during the direct appeal period, counsel did not inform Rivera of the possibility his sentence may be illegal under *Alleyne*.[15]

Lastly, the Commonwealth argues this Court's recent decision in *Melendez–Negron* is not controlling. *See* Commonwealth's Brief 44–47. We agree. In that case, the panel affirmed the order of the PCRA court, which found plea counsel was ineffective for advising the defendant to enter a guilty plea that included an unconstitutional mandatory minimum sentence. *See Melendez–Negron, supra*, 123 A.3d at 1090–1091. The panel explained: "Upon the issuance of the *Alleyne* decision in June of 2013, [c]ounsel was on notice that the constitutionality of [our mandatory minimum statutes] was in question."[16] *Id.* at 1091. Further, the panel found no reasonable basis for counsel's failure to advise the defendant of the *Alleyne* issue, particularly where "the application of the [mandatory minimum statute] resulted in a sentence that was more than double the aggravated range sentence Melendez–Negron would have faced."[17] *Id.*

Here, however, the PCRA court determined plea counsel was **not** ineffective for advising Rivera to accept the plea agree-

---

**15.** We note the Commonwealth's reliance on *Maynard, supra*, is misplaced. First, *Maynard* involved counsel failure to file a **requested** direct appeal. *See id.* at 397–398. In that case, the defendant testified he asked counsel to file an appeal after his guilty plea hearing, a fact which counsel could not recall. *See id.* at 398. The PCRA court ultimately found the defendant's testimony incredible, noting that the defendant had entered a **negotiated** plea agreement. *See id.* In affirming the PCRA court's order, the panel observed:

> After a negotiated plea, there is little about which to complain. There was no showing that the plea was involuntary, the trial court did not have jurisdiction, or the sentence was illegal or outside the scope of the negotiations. Here, nothing has been alleged that would show that an appeal from the

negotiated guilty plea would be anything other than frivolous.

*Id.* at 396–397. In the present case, however, the PCRA court found, and we agree, Rivera has a non-frivolous claim for appeal—that is, his sentence is illegal under *Alleyne*. Accordingly, *Maynard* is not controlling here.

**16.** We note that reargument *en banc* was granted in *Newman, supra*, in June of 2013, and the case was argued before the *en banc* panel in April of 2014.

**17.** The panel noted the "large disparity" in the sentence the defendant agreed to and the one he would have faced had he gone to trial, "establishes prejudice for the purposes of the ineffective assistance of counsel standard." *Melendez–Negron, supra*, 123 A.3d at 1091 n. 6.

ment, a finding with which we agree. Rather, we conclude Rivera's right to relief is predicated upon counsel's failure to consult with Rivera regarding his desire to file a direct appeal—an issue that was not considered by the *Melendez–Negron* panel. For that reason, the relief we grant to Rivera is also different from that provided in *Melendez–Negron*. There, the panel found counsel's ineffectiveness tainted the entry of the guilty plea; therefore, the panel vacated the defendant's plea, and returned the parties to the *status quo* prior to the entry of the plea. *See id.* at 1094. Here, because we find counsel's ineffectiveness tainted Rivera's direct appeal rights, we return the case to the status quo **after** Rivera was sentenced, and before counsel neglected to consult with him regarding his right to file post-sentence motions, and/or a direct appeal expired.

Therefore, because we conclude the PCRA court's ruling that plea counsel was ineffective for failing to consult with Rivera, *sua sponte*, as to whether or not he wished to file a direct appeal, is supported by the record and legally correct,[18] we affirm the order on appeal, and remand for the reinstatement of Rivera's post-sentence and direct appeal rights *nunc pro tunc*.[19]

Order affirmed. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

---

**18.** *See Melendez–Negron, supra.*

**19.** We note the Commonwealth cites *Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089 (2009), for the proposition that the PCRA court overstepped its authority in granting Rivera the right to file post-sentence motions *nunc pro tunc*. The *Liston* court held that a defendant who is granted the right to file a direct appeal *nunc pro tunc* is not automatically entitled to file optional post-sentence motions *nunc pro tunc*. *Id.* at 1090. Nevertheless, the *Liston* court observed that counsel may be deemed ineffective for failing

P.J. Gantman, P.J.E. Ford Elliott, P.J.E. Bender, and Judges Panella and Lazarus join this Opinion.

Judge Bowes files a Concurring and Dissenting Opinion in which Judges Shogan and Olson join.

## CONCURRING AND DISSENTING OPINION BY BOWES, J.:

I agree with my learned colleagues that the order reinstating the direct appeal rights of Appellee Andre Rivera should be affirmed. On the other hand, I also believe, contrary to the majority's conclusion, that counsel was ineffective during her negotiation of the guilty plea, and that it is inconsistent to conclude that counsel's advice during the guilty plea was sound whereas her failure to consult Appellee about an appeal was not.

The pertinent facts follow. At criminal case number 1917–2013, the Commonwealth charged Appellee with twelve offenses in connection with three separate heroin transactions. The affidavit of probable cause states that Appellee arranged via cell phone three separate heroin sales to a confidential informant on August 14, 2012, August 23, 2012, and October 15, 2012. The amount of heroin sold in each case was, respectively, 0.28 grams, 0.54 grams, and 2.1 grams. Two of these transactions occurred in a school zone.

---

to file post-sentence motions when the claim is one that "must be raised in the trial court to be preserved or for purposes of appellate review." *Id.* at 1094 n.9. A motion to withdraw a guilty plea is such a claim. *See Commonwealth v. Lincoln*, 72 A.3d 606, 609–610 (Pa. Super. 2013) ("A defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing. Failure to employ either measure results in waiver.") (citations omitted).

Appellee was charged with an identical set of four charges for each sale: delivery of a controlled substance, criminal use of a communication facility, simple possession, and possession of drug paraphernalia. The delivery of over one gram of heroin subjected Appellee to a mandatory minimum sentence of three years based upon both the weight of the heroin and his prior conviction of possession with intent to deliver. *See* 18 Pa.C.S. § 7508.[1]

Appellee was separately charged at criminal case number 1918–2013 with one count each of possession with intent to deliver marijuana, possession of marijuana, and possession of drug paraphernalia. Those charges stemmed from his arrest on March 3, 2013, for outstanding warrants. Appellee possessed fifty-three grams of marijuana, a large amount of currency, and three cell phones.

Appellee pled guilty on January 23, 2014, to a negotiated aggregate sentence of four-and-one-half years to nine years incarceration. In exchange for this plea, Appellee agreed to the following sentences. At case number 1917–2013, the three to six year mandatory sentence for delivery of more than one gram of heroin, followed by a consecutive sentence of eighteen to thirty-six months at the second count of delivery. Appellee received a con- current sentence of eighteen to thirty-six months at the remaining delivery charge. All other counts were withdrawn. At the 1918–2013 case, Appellee agreed to a sentence of one year probation at the possession of marijuana charge. The other two counts were withdrawn.

Over seven months prior to this plea, the United States Supreme Court issued its decision in *Alleyne v. United States*, — U.S. —, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), wherein it held that any fact, other than a prior conviction, that invokes a mandatory minimum sentence must be submitted to a jury and proven beyond a reasonable doubt. The PCRA court and the majority conclude that counsel effectively advised Appellee to accept the plea, since, when the plea was entered, *Alleyne's* application was still subject to interpretation. For example, some courts held that a mandatory minimum could still be imposed if the salient facts invoking it were submitted to a jury and proven beyond a reasonable doubt. It was only later that mandatory minimum sentencing statutes similar to the one herein, wherein the sentencing court determined its application by a preponderance of the evidence, were declared unconstitutional in their entirety and void. *See Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015); *Commonwealth*

---

1. This provision states:

(a) **General rule.**—Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:
. . . .
(7) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is heroin shall, upon conviction, be sentenced as set forth in this paragraph:
(i) when the aggregate weight of the compound or mixture containing the heroin involved is **at least 1.0 gram** but less than 5.0 grams the sentence shall be a manda- tory minimum term of two years in prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: a mandatory minimum term of three years in prison. . . .

18 Pa.C.S. § 7508 (emphasis added). This statute was held unconstitutionally void in its entirety. *Commonwealth v. Mosley*, 114 A.3d 1072 (Pa.Super. 2015) (applying *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*); *Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super. 2014)).

*v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*).

My review of the record reveals, however, that counsel was not merely mistaken about the application of *Alleyne*, but was completely unaware of that decision and what it held. On direct examination at the PCRA hearing, the Commonwealth elicited the following.

Q. And, counsel, your understanding of *Alleyne*, what was your understanding of *Alleyne* at the time of this plea?

A. At the time of the plea *Alleyne* had **not come down from the Supreme Court yet. So the state of the law in Pennsylvania at the time was that the mandatory minimums were still in effect. And I advised my client in general of their impact and that they applied.**

Q. Well, *Alleyne* did come down before the plea, but—

A. Okay.

Q. What was your understanding of the actual holding of *Alleyne*?

A. The holding of *Alleyne* at that time did not apply to cases of the sort of Mr. Rivera's. It was [*sic*] Mr. Rivera's case had to do with the weight. *Alleyne* had to do with—you'll have to forgive me. I'm a little rusty. I have been on maternity leave. *Alleyne* had to do with the combination of a drug and guns at the scene. Is that fair to say?

Q. You might be confused with the cases, counsel. It was a U.S. Supreme Court case. I think you're thinking of a Pennsylvania case.

A. Okay.

N.T. PCRA Hearing, 4/15/15, at 33–34 (emphasis added). On cross-examination, Appellee clarified that plea counsel did not discuss *Alleyne*.

Q. So I take it that when you discussed the plea negotiations with my client, you didn't tell him something along the lines of, hey, there is this Supreme Court case out there called *Alleyne* in which mandatory minimums are being challenged somehow.

A. Right.

*Id.* at 35.

This is not a situation where counsel was aware of *Alleyne's* holding and negotiated a plea with its holding in mind and in light of differing interpretations regarding its application. Plea counsel's negotiation of the plea itself and her advice to Appellee were undertaken without knowledge of *Alleyne* and with the mistaken belief that the Commonwealth only had to prove the weight of the substances by a preponderance of the evidence and that the judge could find this fact.

Where counsel's effectiveness is at issue, we apply the standard adopted by *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), which

recast the two-factor inquiry regarding the effectiveness of counsel set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as the following three-factor inquiry:

[I]n order to obtain relief based on [an ineffective assistance of counsel] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

The PCRA court found, and the majority agrees, that counsel's advice was reasonable. In my view, since counsel was unaware of pertinent case law, her performance failed the first two aspects of *Pierce*. This conclusion is consistent with *Commonwealth v. Hickman*, 799 A.2d 136 (Pa.Super. 2002), in which we reviewed a claim that counsel ineffectively advised a defendant to plead guilty in exchange for four to eight years imprisonment. Counsel assured the defendant that he would be eligible for parole after two years pursuant to the State Motivational Boot Camp program, 61 P.S. §§ 1121–1129. This advice was incorrect, as he was statutorily barred from the program. We stated that counsel was ineffective due to ignorance of pertinent law.

> Here, we find that counsel's assistance cannot be said to have fallen within "the wide range of professionally competent assistance" demanded by the Sixth Amendment. Specifically, plea counsel gave Appellant reason to believe he could be released from prison in two years and be eligible for parole six months later, when, in fact, Appellant was statutorily ineligible for release into the boot camp program and could not receive parole until he had served four years imprisonment. **Thus based on an ignorance of relevant sentencing law, counsel's advice was legally unsound and devoid of any reasonable basis designed to effectuate Appellant's interests.**

*Id.* at 141 (Pa.Super. 2002) (emphasis added, citation omitted).

Herein, counsel's complete lack of awareness of *Alleyne* rendered her actions legally unsound when she was negotiating and advising Appellee in a case that involved application of a mandatory minimum sentence. The voluntariness of a plea depends on "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* Plea counsel was unaware of *Alleyne* and thus any advice regarding the plea that did not take its holding into consideration was not within that range of competence demanded of attorneys in criminal cases.

Indeed, it is for this very same reason that counsel's failure to consult Appellee regarding an appeal entitles him to relief under *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). Therein, the Court imposed a duty to consult a defendant about a direct appeal in certain circumstances:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew **or should have known.**

*Id.* at 480, 120 S.Ct. 1029 (emphasis added). There also must be prejudice from counsel's failure to consult. Prejudice is present when the defendant demonstrates that, but for counsel's deficient performance, he would have appealed.

Counsel should have been aware of *Alleyne* and that its application presented grounds for appeal. On November 25, 2013, this Court issued *Commonwealth v. Watley*, 81 A.3d 108 (Pa.Super. 2013) (*en banc*), in which we noted that *Alleyne* "renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the

evidence standard." *Id.* at 117 (footnotes omitted). *Watley*, issued almost two months before the entry of Appellee's guilty plea, represented law that counsel should have known and presented a non-frivolous ground for Appellee to pursue on appeal.

The PCRA court found that Appellee would have pursued an appeal if counsel had explained the then-existing law, and this finding is supported by the record. Since I disagree with the majority's rationale in part, I respectfully register this dissent. However, I join in the determination to reinstate Appellee's appeal rights.

Judge Shogan joins the Concurring/Dissenting Opinion.

Judge Olson joins the Concurring/Dissenting Opinion.