**[J-37-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 46 MAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 620 MDA 2017 dated |
| | : | November 30, 2017, reconsideration |
| v. | : | denied February 9, 2018, Reversing |
| | : | the PCRA order of the Lancaster |
| | : | County Court of Common Pleas, |
| CHRISTIAN LEE FORD, | : | Criminal Division, at Nos. CP-36-CR- |
| | : | 0001443-2016, CP-36-CR-0001496- |
| Appellee | : | 2016, and CP-36-CR-0002530-2016 |
| | : | dated March 10, 2017 and remanding. |
| | : | |
| | : | SUBMITTED:  March 18, 2019 |


**OPINION**


**JUSTICE WECHT**                                         **DECIDED:  September 26, 2019**

The Sentencing Code mandates that trial courts "shall not sentence a defendant to pay a fine unless it appears of record that the defendant is or will be able to pay" it.  42 Pa.C.S. § 9726(c).  The question presented in this post-conviction appeal is whether the Sentencing Code's ability-to-pay prerequisite is satisfied when a defendant agrees to pay a given fine as part of a negotiated guilty plea agreement.  We hold that it is not, and that a defendant's mere agreement to pay a specific fine does not constitute evidence that he is or will be able to satisfy the financial obligation.

This appeal involves three separate criminal cases.  The first case began in July 2015, when Christian Lee Ford drove his vehicle off the road, struck several mailboxes, and crashed into a fire hydrant.  A police officer who responded to the accident noticed

that Ford was unsteady on his feet and was unable to follow simple instructions. Paramedics transported Ford to the hospital for further evaluation and medical treatment.

At the hospital, a police officer told Ford that he was under arrest for DUI and began reading Ford the required implied consent warnings. *See Pa. Dep't. of Transp. v. O'Connell*, 555 A.2d 873, 874 (Pa. 1989). Before the officer could finish reading the *O'Connell* warnings, however, Ford interjected and told the officer that the chemical test would likely reveal cocaine, Xanax, Percocet, and marijuana in his blood. That prediction turned out to be partially correct; Ford ultimately tested positive for cocaine, amphetamines, and heroin. As a result, he was charged with three counts of driving under the influence of a controlled substance and one count of driving with a suspended license.[1] Ford subsequently failed to appear for his preliminary hearing on those charges, and a bench warrant was issued for his arrest.

The events that led to the second of Ford's criminal cases occurred six months after Ford's failure to appear at his preliminary hearing on the DUI charges. On that day, two police officers spotted Ford at a grocery store in Lancaster County. After confirming that Ford had an active bench warrant, the officers approached him in the parking lot, but he fled on foot. When the officers eventually caught Ford, he continued to resist, and substantial force was required to effectuate the arrest. A search incident to arrest revealed that Ford had 159 stamp bags of heroin and a digital scale in his possession. He was charged with possession with intent to deliver a controlled substance ("PWID"), possession of drug paraphernalia, and resisting arrest.[2] Ford posted bail ten days later and again was released from custody.

---

[1]     75 Pa.C.S. §§ 3802(d)(1)(ii), 3802(d)(1)(iii), 3802(d)(2), and 1543(b)(1).

[2]     35 P.S. §§ 780-113(a)(30), 780-113(a)(32), and 18 Pa.C.S. § 5104.

A few weeks after posting bail, Ford went missing. A bail bondsman who was attempting to locate Ford and return him to the Lancaster County Prison eventually found Ford and detained him. When the bondsman noticed that Ford was carrying a stamp bag of heroin and a syringe, he called the police for assistance. This brings us to Ford's third and final criminal case. The police officers who responded to the bail bondsman's request for assistance arrested Ford and charged him with possession of a controlled substance and possession of drug paraphernalia.[3]

On June 23, 2016, Ford entered into a negotiated guilty plea agreement, which disposed of all three of his criminal cases. With regard to the charges stemming from the DUI-related accident, Ford pleaded guilty to three counts of driving under the influence of a controlled substance and one count of driving with a suspended license. Ford and the Commonwealth agreed to a sentence of one to four years' incarceration and a $1,500 fine for the DUI charges, and 90 days' incarceration and a $1,000 fine for driving with a suspended license.

As for his second set of criminal charges, Ford pleaded guilty to PWID, resisting arrest, and possession of drug paraphernalia. Under the terms of the plea agreement, Ford and the Commonwealth agreed to a sentence of two to four years' incarceration and a fine of $100 for PWID, two years of probation for resisting arrest, and one year of probation for possession of drug paraphernalia.

Lastly, in his third case, Ford agreed to plead guilty to possession of a controlled substance and possession of drug paraphernalia. Ford and the Commonwealth negotiated a sentence of three years' probation and a $100 fine for possession of a controlled substance and one year of probation for possession of drug paraphernalia.

---

[3] 35 P.S. §§ 780-113(a)(16), 780-113(a)(32).

The agreement stipulated that Ford would serve all periods of incarceration and probation concurrently and would be responsible for the costs of prosecution.

The trial court accepted Ford's guilty plea and sentenced him in accordance with the plea agreement. Ford did not file post-sentence motions or a direct appeal, and his judgment of sentence became final in late July 2016. Two months after that, Ford filed a *pro se* "Petition for Review," which the court correctly treated as a timely-filed Post Conviction Relief Act[4] ("PCRA") petition. The court then appointed counsel, who filed an amended PCRA petition on Ford's behalf.

In his amended petition, Ford alleged that he is indigent, that he cannot afford to pay the fines and costs associated with his judgment of sentence, and that his inability to pay those fines and costs will prevent him from being paroled. *See* Amended PCRA Petition, 12/27/2016, at 1. The gist of Ford's claim is that his sentence is illegal because the trial court "did not conduct a hearing or find facts related to [his] ability to pay the fines and costs" that it imposed. *Id.*; *see* 42 Pa.C.S. § 9726(c). Alternatively, Ford argued that plea counsel was ineffective in "failing to pursue a sentence modification or direct appeal from the unlawful sentence." Amended PCRA Petition at 2.

The PCRA court issued a Rule 907[5] notice stating that it intended to dismiss Ford's petition without a hearing. Ford did not file a response, and the PCRA court issued an opinion and order dismissing Ford's petition. In its opinion, the court first explained that, while defendants are not entitled to a presentence hearing on their ability to pay the mandatory costs of prosecution, such a hearing generally is required when a defendant

---

[4]    *See* 42 Pa.C.S. §§ 9541-46.

[5]    *See* Pa.R.Crim.P. 907(1) (providing that courts may dismiss PCRA petitions without a hearing whenever there are no genuine issues concerning any material fact and no purpose would be served by further proceedings).

is sentenced to pay a fine.[6]  *See* PCRA Court Opinion, 3/10/2017, at 11-12 (citing *Commonwealth v. Childs*, 63 A.3d 323, 326 (Pa. Super. 2013)).  Indeed, Subsection 9726(c) of the Sentencing Code provides that:

> The court shall not sentence a defendant to pay a fine unless it appears of record that:
>
> (1) the defendant is or will be able to pay the fine; and
>
> (2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime.

42 Pa.C.S. § 9726(c).

Despite this statutory language, the PCRA court concluded that no hearing was required in Ford's case because the specific fines imposed were mandated by statute, meaning that the court lacked the authority to impose a reduced fine.  PCRA Court Opinion at 12 (concluding that Subsection 9726(c) "does not . . . apply to the mandatory fine provisions applicable in this case"); *see Commonwealth v. Gipple*, 613 A.2d 600, 601 n.1 (Pa. Super. 1992) (holding that Subsection 9726(c) does not apply to mandatory fines).

On appeal to the Superior Court, Ford again argued that his sentence is illegal because the trial court did not inquire into his ability to pay the fines specified in the plea agreement.  The panel acknowledged that Ford explicitly agreed to pay the fines at issue when he entered into a negotiated guilty plea.  Even so, the panel noted, a claim that "there was no record of the defendant's ability to pay before the sentencing court" constitutes a nonwaivable challenge to the legality of the sentence.[7]  *Commonwealth v.*

---

[6] Although a *presentence* ability-to-pay hearing is not required when costs alone are imposed, our Rules of Criminal Procedure provide that a defendant cannot be committed to prison for failure to pay a fine or costs unless the court first determines that he or she has the financial means to pay the fine or costs.  Pa.R.Crim.P. 706(A).

[7] *See Commonwealth v. Foster*, 17 A.3d 332 (Pa. 2011) (plurality) (citing *In re M.W.*, 725 A.2d 729, 731 (Pa. 1999) for the proposition that a challenge to the sentencing court's

*Ford*, No. 620 MDA 2017, 2017 WL 5943470, at \*3 (Pa. Super. Nov. 30, 2017) (citing *Commonwealth v. Boyd*, 73 A.3d 1269, 1273-74 (Pa. Super. 2013)). And challenges to the legality of a sentence—even a sentence resulting from a negotiated guilty plea—are cognizable under the PCRA. *Id.* at \*2; *Commonwealth v. Gentry*, 101 A.3d 813, 819 (Pa. Super. 2014) ("[A] criminal defendant cannot agree to an illegal sentence, so the fact that the illegality was a term of his plea bargain is of no legal significance.").

The panel next reviewed the transcript of Ford's guilty plea and sentencing hearing, which revealed that "no inquiry was made, and no record existed, as to [Ford's] ability to pay the agreed-upon fines." *Id.* at \*3. Although a presentence hearing on the ability to pay a mandatory fine is not required, *see Gipple*, 613 A.2d at 601 n.1, the intermediate court disagreed with the PCRA court's suggestion that all of Ford's fines were mandated by statute.

Ford's plea agreement included four fines: $1,500 for driving under the influence of a controlled substance, $1,000 for driving while suspended, $100 for PWID, and $100 for simple possession. Given that Ford had a prior DUI conviction, the $1,500 fine that he received indeed was mandatory. *See* 75 Pa.C.S. § 3804(c)(2)(ii). Thus, the Superior Court agreed with the PCRA court's conclusion that Ford was not entitled to a hearing regarding his ability to pay the DUI fine.

In contrast, the three other fines that the trial court imposed were not mandatory. Two of the offenses for which Ford received fines, simple possession and PWID, did not subject him to a mandatory fine at all. And the remaining offense, driving while suspended, carries a mandatory fine that is substantially less than the one Ford actually

---

statutory authority to impose a particular sentence implicates the legality of the sentence); *Commonwealth v. Barnes*, 151 A.3d 121, 127 (Pa. 2016) (adopting the lead opinion in *Foster*).

received.[8] The Superior Court therefore concluded that Ford's three non-mandatory fines were illegal, given that it does not "appear of record" that he is or will be able to pay them. For this reason, the panel reversed the PCRA court's order, vacated Ford's non-mandatory fines, and remanded for resentencing. In a footnote, however, the court noted that the Commonwealth may ask the PCRA court to vacate Ford's entire judgment of sentence if it believes "that it is no longer receiving the benefit of [its plea] bargain." *Ford*, 2017 WL 5943470, at *4 n.4.

The Commonwealth then petitioned this Court for allowance of appeal, which we granted to consider whether the Sentencing Code requires a separate inquiry into a defendant's ability to pay a fine that he or she agreed to pay as part of a negotiated guilty plea. To answer that question, we begin with the text of Section 9726, which provides, in relevant part, as follows:

> **(b) Fine as additional sentence.–**The court may sentence the defendant to pay a fine in addition to another sentence, either involving total or partial confinement or probation, when:
>
>> (1) the defendant has derived a pecuniary gain from the crime; or
>> (2) the court is of the opinion that a fine is specially adapted to deterrence of the crime involved or to the correction of the defendant.
>
> **(c) Exception.–**The court shall not sentence a defendant to pay a fine unless it appears of record that:
>
>> (1) the defendant is or will be able to pay the fine; and
>> (2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime.

---

[8] As the panel explained, the PCRA court evidently believed that Ford's conviction for driving while suspended carried a mandatory $1,000 fine. *See* PCRA Court Opinion at 12-13. In point of fact, however, the specific subsection of the driving while suspended statute under which Ford was charged and to which he pleaded guilty includes a mandatory fine of only $500. *See* 75 Pa.C.S. § 1543(b)(1).

42 Pa.C.S. § 9726.[9]

Consistent with this unambiguous statutory mandate, all parties agree that a sentence is illegal when the record is silent as to the defendant's ability to pay the fine imposed. *See* Reply Brief for Commonwealth at 2; Brief for Ford at 9. Nevertheless, the Commonwealth contends that, "[w]here a defendant specifically bargains for and agrees to pay a fine and asks the court to accept the terms of the plea agreement, his conduct certifies that he is not only able but willing to pay that fine." Brief for Commonwealth at 9. In other words, the Commonwealth argues, Ford's agreement to pay the fines at issue necessarily proves that he is able to pay those fines. Brief for Commonwealth at 9 ("By necessary implication, a party has the ability to perform the terms of the bargain into which he enters."); Reply Brief for Commonwealth at 2 ("[W]hen the fine is the result of the plea-bargaining process, it will always appear of record that the defendant is able and willing to pay.").

If, as the Commonwealth suggests, the General Assembly had intended to allow a defendant's agreement to pay a specific fine to serve as a substitute for evidence "of record" that he or she can afford to pay it, then it likely would have exempted negotiated guilty pleas from Subsection 9726(c). But the plain language of the statute is clear: trial courts are without authority to impose non-mandatory fines absent record evidence that the defendant is or will be able to pay them.

We cannot accept the Commonwealth's argument that a defendant's agreement to pay a given fine is evidence of his ability to pay for purposes of Subsection 9726(c).

---

[9]    Our interpretation of Section 9726, as with all questions of statutory interpretation, is guided by the principle that the plain language of a statute provides the best indication of the General Assembly's intent. *Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016). For this reason, when the words of a statute are unambiguous, we do not look beyond the law's plain meaning "under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

The mere fact that a person agrees, as part of a *quid pro quo* arrangement, to pay a specific sum does not necessarily mean that he or she can (or even will be able to) make good on that promise. This is especially true in the plea-bargaining context, where it is fair to say that the primary concern of most defendants is the length of their incarceration rather than the sum of their fines. Put differently, when the Commonwealth extends a plea offer that includes a short prison sentence and an exorbitant fine, a rational defendant might—either out of shortsightedness or naïve optimism—gladly accept the offer even though he or she has no realistic strategy to satisfy the debt.[10] For this reason alone, we are unpersuaded that Ford's guilty plea agreement represents the sort of ability-to-pay evidence that the Sentencing Code unambiguously requires.

The Dissent frets that enforcing the Sentencing Code's unambiguous statutory command requiring record evidence of the defendant's ability to pay will reward "a defendant's misrepresentations while under oath." Dissenting Opinion at 4. This is a straw man. Ford made no representations at all about whether he could afford to pay the negotiated fines. That is why the Dissent flips the script, underscoring instead that Ford "never expressed concern regarding his ability to satisfy the fines." *Id.* at 3. That may be true, but it is wholly irrelevant. Subsection 9726(c) does not put the burden on defendants to inform the court that they might have trouble paying a fine. Instead, it instructs

---

[10] The Dissent contends that "[t]his assumption is wholly immaterial to discerning the plain language of the statute." Dissenting Opinion at 4. Again, though, all parties agree that the Sentencing Code requires record evidence of the defendant's ability to pay any non-mandatory fines. *See* 42 Pa.C.S. § 9726(c) ("The court shall not sentence a defendant to pay a fine unless it appears of record that . . . the defendant is or will be able to pay the fine[.]"). The Commonwealth's chief argument is that Ford's agreement to pay the fines in question necessarily proves that he can afford to pay them. Thus, evaluating the soundness of the Commonwealth's agreement-ergo-ability thesis is, in fact, necessary to resolve this appeal.

sentencing courts not to impose a fine absent record evidence of the defendant's ability to pay. *See* 42 Pa.C.S. § 9726(c).

The Commonwealth also argues that the decision below contradicts existing Superior Court precedent. Specifically, the Commonwealth cites *Commonwealth v. Gardner*, 632 A.2d 556 (Pa. Super. 1993), a case in which a trial court ordered a defendant to pay restitution without considering his ability to pay the same.[11] In *Gardner*, the defendant and the Commonwealth entered into a plea agreement which required the defendant to, among other things, make full restitution to his victim. Although he agreed to these terms, the defendant later appealed his judgment of sentence and challenged the trial court's failure to independently evaluate his ability to pay the full restitution. The Superior Court summarily disposed of this argument with virtually no discussion or analysis. The court held that the defendant was precluded from challenging his ability to pay because he "had agreed to pay restitution as part of the plea agreement." *Id.* at 556.

The Superior Court's decision in *Gardner* does not alter our conclusion that a defendant's mere agreement to pay a fine is not, *ipso facto*, evidence that he is able to pay it. Notably, the *Gardner* Court was not tasked with interpreting an unambiguous statute like the one before us today. Instead, the (now defunct) requirement that trial courts consider a defendant's ability to pay before ordering restitution was invented by judges. *See Commonwealth v. Wood*, 446 A.2d 948, 950 (Pa. Super. 1982). Understood this way, *Gardner* was more of an evolution of the common law governing restitution than it was a broad pronouncement that defendants are precluded from challenging the legality

---

[11] When *Gardner* was decided, prevailing Superior Court precedent required trial courts to consider a defendant's "ability to pay" before ordering restitution. *See Commonwealth v. Valent*, 463 A.2d 1127, 1128 (Pa. Super. 1983). The General Assembly has since abolished that requirement by statute. *See* 18 Pa.C.S. § 1106(c)(1)(i) (providing that courts must order full restitution "[r]egardless of the current financial resources of the defendant").

of negotiated guilty pleas. In short, we believe that the rule announced in *Gardner*—one that this Court is not bound to follow and the Superior Court itself has more or less abandoned[12]—is not controlling in the context of non-mandatory fines.

Lastly, the Commonwealth argues that, as a policy matter, applying Subsection 9726(c) in the negotiated guilty plea context is unwise. The Commonwealth contends that the Superior Court's decision below has the potential to "substantially burden or even derail the plea-bargaining process." Brief for Commonwealth at 9. This is so, according to the Commonwealth, because "[r]equiring a court to conduct an ability-to-pay inquiry after accepting a negotiated plea agreement unnecessarily prolongs and complicates plea proceedings." *Id.* at 10. In the Commonwealth's estimation, it would be "a burdensome waste of precious judicial resources" to mandate that trial courts "probe into the financial condition of a defendant who has already agreed to pay a particular fine." *Id.*

It bears repeating that this Court has no authority to disregard the plain language of the Sentencing Code in an effort to promote efficiency. *See* 1 Pa.C.S. § 1921. Beyond that, however, we are not convinced that it will be as onerous as the Commonwealth suggests for trial courts to enforce the statutory directive that a defendant's ability-to-pay must appear of record.[13] Although there may be other means to satisfy Subsection 9726(c), as a best practice, trial courts should simply consider whether the defendant is or will be able to pay any negotiated fines *before* accepting the parties' plea agreement.

---

[12] *See, e.g.*, *Commonwealth v. Rivera*, 154 A.3d 370, 381 (Pa. Super. 2017) ("Our cases clearly state that a criminal defendant cannot agree to an illegal sentence, so the fact that the illegality was a term of his plea bargain is of no legal significance."); *Gentry*, 101 A.3d at 815 (same).

[13] Of course, if the Commonwealth wishes to avoid the prospect that a plea bargain will be rejected because of the defendant's inability to pay a particular fine, it can always leave the amount of the fine to the trial court's discretion in the first instance.

If the court finds that the defendant cannot afford to pay one or more negotiated fines, then the proposed sentence is illegal and the proposed guilty plea agreement should be rejected. We are confident that this procedure will not "derail the plea-bargaining process." Brief for Commonwealth at 9. Indeed, in many cases the trial court will be able to ascertain the defendant's ability to pay by asking one simple question: "How do you plan to pay your fines?"[14]

Having rejected all of the Commonwealth's arguments, we agree with the Superior Court's conclusion that Ford received an illegal sentence when the trial court imposed non-mandatory fines without any evidence that Ford was (or would be) able to pay them. As for the Superior Court's chosen remedy, however, the panel should have vacated Ford's entire judgment of sentence rather than simply vacating the illegal fines and remanding for resentencing. Indeed, the Commonwealth persuasively argues that it will be deprived of the benefit of its bargain if criminal defendants can, for instance, agree to pay a larger fine in exchange for a shorter term of incarceration, but then later attempt to eliminate or reduce the fine in a post-conviction proceeding. *See* Brief for Commonwealth at 10. Because selectively vacating specific conditions of a plea agreement threatens to upset the parties' underlying bargain, the better remedy is to put both sides right back where they started, at which point they can begin plea negotiations anew or proceed to trial.

In summary, the Superior Court correctly held that Subsection 9726(c) of the Sentencing Code requires record evidence of a defendant's ability to pay a fine even in

---

[14] Although the parties' briefs and the lower court opinions speak in terms of the trial court "holding a hearing on" or "inquiring into" a defendant's ability to pay, we note that Subsection 9726(c) does not necessarily require testimonial evidence. It is certainly possible that non-testimonial evidence—like a thorough presentence investigation report detailing a defendant's assets and income—could satisfy Subsection 9726(c)'s mandate. But no such evidence exists in this case.

the negotiated guilty plea context. Because no such evidence exists in the record before us, the trial court imposed an illegal sentence, which we vacate in its entirety. Thus, we affirm the Superior Court in part and remand for further proceedings consistent with this opinion.

Chief Justice Saylor and Justices Baer, Todd, Donohue and Dougherty join the opinion.

Justice Mundy files a dissenting opinion.