**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN BROWN-CAMP | : | No. 1179 EDA 2023 |

Appeal from the PCRA Order Entered February 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003503-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAURICE SMITH | : | No. 1147 EDA 2023 |

Appeal from the Order Entered December 7, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003502-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAURICE SMITH | : | |
| | : | |
| Appellant | : | No. 1203 EDA 2023 |

Appeal from the Order Entered December 7, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003502-2015

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 14, 2025**

The Commonwealth appeals the orders granting new trials to co-defendants Bryan Brown-Camp and Maurice Smith, based upon their Post Conviction Relief Act ("PCRA") claims that their trial attorneys rendered ineffective assistance by failing to call an expert witness regarding their victim's time of death.[1, 2]  Since we conclude that the PCRA court has not undertaken the necessary review to reach that result, we vacate the orders and remand for the court to apply the proper analysis before ruling upon the co-defendants' PCRA petitions.

These cases have lengthy histories, which largely run in tandem.  In 2017, a jury convicted the co-defendants of third-degree murder and conspiracy to commit robbery based upon their involvement in the 2013 shooting death of Tevan Patrick.  The Commonwealth alleged that the co-

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The PCRA court announced its rulings in open court on April 5, 2023, but those orders were not reduced to writing and served on the parties, and thereby entered, until December 7, 2023 (Smith's case) and February 26, 2024 (Brown-Camp's case).  **See** Pa.R.A.P. 108(a)(1), (d)(1).  We have amended the captions accordingly.

[2] Despite our initial denial of the Commonwealth's request to consolidate, in the interest of judicial efficiency, we have elected to address the co-defendants' appeals in a single writing, as the issues and history overlap significantly.  We also note that Smith has discontinued his cross-appeal.  **See** Pa.R.A.P. 1973(a) ("An appellant may discontinue an appeal . . . as a matter of course until 14 days after the date on which the appellee's principal brief is due[.]").

defendants "lured the victim into their car to ostensibly commit a robbery, but later killed him." *Commonwealth v. Brown-Camp* ("*Brown-Camp I*"), 209 A.3d 525, 2019 WL 310813, at *1 (Pa.Super. 2019) (unpublished memorandum). As is relevant to the instant appeal, it sought to prove that Mr. Patrick, whose body was found in an abandoned house on April 25, 2013, had been killed there by the co-defendants between 9:30 p.m. and 10:00 p.m. on April 22, 2013. This theory was heavily premised upon the following evidence, which was introduced by the Commonwealth at trial:

> Earlier in the day on April 22, 2013, Mr. Patrick asked his cousin and [Brown-Camp's] girlfriend, Janeicia Jackson, for [Brown-Camp's] phone number, which she provided. Later that same day, [the co-defendants] were observed driving a silver four-door Hyundai and an eyewitness observed Mr. Patrick enter a silver four-door car in Delaware. The triangulation of cell phone pings placed [Brown-Camp] and Mr. Patrick near each other in Delaware and cell phone records established that they were in contact with one another. The triangulation of cell phone pings then tracked [Brown-Camp], Smith, and Mr. Patrick in southwestern Philadelphia. All three phones were utilizing cell towers that covered the site where Mr. Patrick's body was recovered.
>
> Reginald Tyler testified that he received a text message from Mr. Patrick on the night of April 22 saying that "if anything fishy happened to me, B-Y did it." [Brown-Camp was known by the nickname "B-Y."] At approximately 10:00 p.m. that evening, Mr. Patrick's cell phone went offline somewhere over the Schuylkill River. Immediately prior, it had been utilizing the same cell tower as Smith's phone. After Mr. Patrick's cell phone went offline, he made no outgoing communications.
>
> The Commonwealth also presented the testimony of Terry Kearney, who testified that Smith told him that Smith had driven his girlfriend's silver four-door car to Delaware to meet Mr. Patrick, taken him back to southwestern Philadelphia to rob him, and then shot Mr. Patrick when he attempted to run. Melissa Palmer testified that [Brown-Camp] admitted to setting up Mr. Patrick to

> be robbed, that he picked up Mr. Patrick in Delaware, and that Mr. Patrick had been shot, but not by [him].

*Commonwealth v. Brown-Camp* ("*Brown-Camp II*"), 287 A.3d 901, 2022 WL 16545564, at *1 (Pa.Super. 2022) (non-precedential decision) (cleaned up).

The Commonwealth's evidence established that Mr. Patrick was in full rigor mortis when he was found on April 25, 2013. Gary Collins, M.D., conducted Mr. Patrick's autopsy the following day, at which time Mr. Patrick remained in full rigor. Dr. Collins authored an accompanying report, but by the time of trial, no longer worked at the medical examiner's office in Philadelphia. Therefore, the Commonwealth called Albert Chu, M.D., to testify about the post-mortem findings. Smith's trial attorney elicited on cross-examination of Dr. Chu that rigor mortis "typically starts within a few hours of death and usually persists for roughly [forty-eight] hours." PCRA Court Opinion (Brown-Camp), 9/15/23, at 3 (cleaned up).

On direct appeal, this Court affirmed the co-defendants' judgments of sentence and our Supreme Court denied their respective petitions for *allocatur*. *See Brown-Camp I*, 209 A.3d 525, *appeal denied*, 240 A.3d 99 (Pa. 2020); *Commonwealth v. Smith* ("*Smith I*"), 209 A.3d 1048 (Pa.Super. 2019) (unpublished memorandum), *appeal denied*, 216 A.3d 232 (Pa. 2019). Although each defendant timely filed a PCRA petition, which the PCRA court dismissed without a hearing, the cases took divergent paths in our Court following that dismissal. Thus, we will set forth the remainder of their relevant histories separately.

**Brown-Camp's PCRA**

Brown-Camp's PCRA petition included, *inter alia*, a claim that trial counsel was ineffective for failing to retain an expert witness to refute the Commonwealth's theory about Mr. Patrick's time of death. He identified Dr. Collins as the expert witness his attorney should have called. Further,

> [the] petition included a new report authored by Dr. Collins wherein he concluded that, based on the forensic evidence, it was "highly unlikely" that Mr. Patrick was shot and killed on April 22, 2013, and opined instead that his time of death was sometime between 5:00 p.m. on April 24 and 5:00 a.m. on April 25, 2013. PCRA Petition, 12/28/20, Exhibit K at 4-5. Additionally, Dr. Collins opined that "the two penetrating gunshot wounds to Mr. Patrick's head would have been immediately incapacitating" and thus it was "not possible that Mr. Patrick would have been shot on April 22, 2013, and survived his injuries until April 25, 2013." ***Id***., Exhibit K at 5.

***Brown-Camp II***, 2022 WL 16545564, at *5 (cleaned up).

The PCRA court dismissed the claim without a hearing for lack of merit. It offered no substantive analysis at the time it provided Brown-Camp notice of its intent to dismiss, nor did it proffer any explanation in the order of dismissal. In a later opinion to this Court, the PCRA court described that it had concluded that, although Brown-Camp established that a witness was willing and able to testify, and counsel should have been aware of the witness, he could not establish prejudice due to the overwhelming evidence that Mr. Patrick was murdered on April 22, 2013. ***See*** PCRA Court Opinion (Brown-Camp), 1/24/22, at 9-12.

Upon review, we determined that the PCRA court erred because its conclusion was premised upon a credibility determination made without the benefit of an evidentiary hearing:

> [I]t is beyond cavil that Dr. Collins's testimony regarding Mr. Patrick's date of death would have been helpful to the defense. Specifically, it would have altered the significance of the April 22 cell phone evidence and provided the opportunity for [Brown-Camp] to present a potential alibi defense for the actual date of the murder. This paradigm shift in focus on when Mr. Patrick was killed and the evidence of who he was with at the time of his death could have cast reasonable doubt in the mind of at least one juror, thereby affecting the verdict in this case. At trial, counsel argued that, based upon an examination of Dr. Chu's testimony and the forensic evidence, Mr. Patrick was killed on April 23, not April 22. However, Dr. Collins's report indicates that he was willing and able to testify that, in his medical opinion, the date of death was April 24 or April 25, which was even further removed from the evidence placing [Brown-Camp] in Mr. Patrick's vicinity. This would have significantly strengthened the defense's argument that the Commonwealth's evidence failed to prove beyond a reasonable doubt that [Brown-Camp] was involved in Mr. Patrick's death.
>
> [Brown-Camp] was entitled to an evidentiary hearing wherein the PCRA court would make a credibility determination as to Dr. Collins's testimony and then reweigh the Commonwealth's evidence of guilt from [Brown-Camp's] trial and decide what impact, if any, the absence of Dr. Collins's testimony had upon the evidentiary picture the Commonwealth developed in [his] trial.

*Id*. at *5-6 (cleaned up). Consequently, we vacated the PCRA order dismissing that claim and remanded for an evidentiary hearing on the prejudice prong of the ineffective assistance of counsel test for the claim

challenging trial counsel's effectiveness in choosing not to call Dr. Collins as an expert as to Mr. Patrick's time of death.[3]

### Smith's PCRA

Meanwhile, Smith had alleged in his amended PCRA petition that trial counsel was ineffective for failing to call Cyril H. Wecht, M.D., as an expert regarding the effects of rigor mortis in deducing Mr. Patrick's time of death. **See** Amended PCRA Petition, 7/6/20, at ¶¶ 70-88. He attached email exchanges with Dr. Wecht wherein the pathologist indicated that he would need to consult the entire record to offer an opinion, but declared that full rigor mortis would not persist for seventy-two hours in an environment where the ambient temperature was between sixty and seventy degrees. **Id**., Exhibit A (July 22, 2019 email). In a supplemental amended PCRA petition, PCRA counsel added a claim identical to Brown-Camp's, *i.e.*, that trial counsel was ineffective for failing to call Dr. Collins as an expert witness.[4] **See**

_____

[3] We note that two of the three judges who decided **Brown-Camp II** are also on this panel. This author penned that non-precedential decision, and Judge Stevens concurred in that result. We also remanded for a limited hearing on another claim, but that is not germane to the instant appeal.

[4] Although the PCRA court did not explicitly grant Smith's request for leave to file this supplemental petition, it did not deny it and implicitly ratified the addition by considering the issue in its Pa.R.A.P. 1925(a) opinion, which explained the reasons for dismissing Smith's petition, and that claim in particular. **See** PCRA Court Opinion (Smith), 2/7/22, at 7-10. **See also Commonwealth v. Brown**, 141 A.3d 491, 504 (Pa.Super. 2016) (concluding that "when a petitioner files supplemental materials to a PCRA petition, and the PCRA court considers such materials, an attempt by the Commonwealth to preclude consideration of such materials fails" (cleaned up)).

Supplemental Amended PCRA Petition, 2/16/21, at ¶¶ 36-58. As with Brown-Camp's petition, the PCRA court, without any analysis, summarily dismissed Smith's petition for lack of merit.

On appeal, Smith raised several issues in his Rule 1925(b) statement. Most relevantly, he challenged the court's dismissal of his expert witness claim. In its Rule 1925(a) opinion, the PCRA court explained that it dismissed this claim because Smith could not establish prejudice given the overwhelming evidence that Mr. Patrick died on April 22 when he was with Smith, and because the cross-examination of Dr. Chu elicited testimony that rigor mortis usually persists for approximately forty-eight hours. *See* PCRA Court Opinion (Smith), 2/7/22, at 7-11. It did not opine upon the other prongs of the ineffective assistance of counsel test.

Smith also alleged in his concise statement that trial counsel rendered ineffective assistance for failing to challenge Smith's conviction based upon a discrepancy between the date of the crime on the bills of information (April 25) and the Commonwealth's theory at trial of when the murder occurred (April 22). The PCRA court opined that this issue was waived because he raised it for the first time on appeal. *Id*. at 15-16.

In this Court, PCRA counsel filed an application for remand so that Smith could pursue a claim challenging PCRA counsel's effectiveness for neglecting to raise the bills-of-information claim in his PCRA petition. We concluded that Smith had not had an opportunity to develop his ineffective assistance of PCRA counsel claim because he remained represented by PCRA counsel, and

because his assertion was not merely a boilerplate claim of ineffectiveness, we granted the application for remand. In doing so, we vacated the PCRA court's order and directed the court to appoint new counsel to file an amended petition on Smith's behalf. We advised new counsel that they should utilize the amended petition to develop a layered ineffectiveness claim against PCRA counsel and re-raise any original PCRA claims. *See Commonwealth v. Smith* ("*Smith II*"), 287 A.3d 849, 2022 WL 6906967 (Pa.Super. 2022) (non-precedential decision).[5]

On remand, the PCRA court appointed new counsel, who filed a supplemental amended petition. The court rejected the new claim regarding the discrepancy in the bills of information but directed that it would conduct a hearing on trial counsel's failure to call an expert witness regarding the victim's time of death.[6] *See* N.T. PCRA Hearing, 4/5/23, at 6.

_____

[5] As with *Brown-Camp II*, two of the judges who took part in deciding *Smith II* are also on this panel. Specifically, both that non-precedential decision and this one share the same author, and Judge Stevens joined the disposition in *Smith II*.

[6] We note that Smith did not re-assert the failure to call an expert witness issue in his supplemental amended petition, and the Commonwealth now argues that it therefore could not be a basis for granting PCRA relief. *See* Commonwealth's reply brief at 3-4. Despite not being re-raised, the PCRA court decided to conduct a hearing on that claim and, notably, the Commonwealth not only did not object but, in fact, **agreed** to a joint hearing with Brown-Camp on his remanded expert witness issue because it believed Smith's bills-of-information issue was "substantively the same[.]" Commonwealth's Answer, 3/7/23, at 7. Accordingly, we reject the declaration in the Commonwealth's reply brief that this claim was not properly before the PCRA court in the hearing on remand.

**Post-Remand Evidentiary Hearing**

The PCRA court conducted a joint evidentiary hearing on April 5, 2023, as to, *inter alia*, the claim that each co-defendant's trial attorney was ineffective for failing to call Dr. Collins. Of relevance, Brown-Camp and Smith introduced a chart cataloging the outside temperature in the area surrounding the abandoned house from April 22 to April 25, 2013, and called as witnesses the two pertinent medical examiners, Dr. Chu and Dr. Collins. Smith also presented testimony from his trial counsel, James Berardinelli, Esquire, regarding, *inter alia*, his investigation into calling an expert witness and cross-examining Dr. Chu about Mr. Patrick's time of death. *Id*. at 148-50. The Commonwealth put forward Brown-Camp's trial attorney, Chistopher Phillips, Esquire.

Dr. Chu explained that he was unaware of the Commonwealth's theory that Mr. Patrick died on April 22 when he testified at the jury trial. While he could not opine as to a specific time of death when asked at the PCRA hearing, he did provide a range. In doing so, he noted that the duration of the different stages of rigor mortis can be affected by the temperature where the body is kept. Dr. Chu acknowledged that he did not know the temperature inside the abandoned home where Mr. Patrick's body was found or how that affected the duration of rigor mortis in this case. Nonetheless, he declared, based upon the status of Mr. Patrick's rigor mortis and the outdoor temperatures during the relevant period, that "it is possible he was killed on the 22nd but it is probably more likely he was killed closer to the 25th." *Id*. at 21, 72. He

further clarified: "[I]n my opinion, and, again, this is all sort of subjective based on observations of bodies, it is more likely that he was killed on the 23rd, or the 24th, or even earlier on the 25th, yes but I can't rule out that he was killed on the 22nd." *Id*. at 48.

Dr. Collins testified that he conducted the autopsy of Mr. Patrick. His post-mortem findings included that Mr. Patrick remained in full rigor at the time of the exam, which, as noted, was conducted on April 26, 2013, one day after his body was found. Additionally, Dr. Collins discerned that his body showed no signs of decomposition, the internal organs were not dusky or discolored, and there had been no indication of rodent or insect activity. In consideration of these observations and the details reported from the crime scene, Dr. Collins determined the time of death to be "anywhere from most likely the 24th or the 25th . . . maybe as early as the 23rd but that's about it. Anything beyond that would be highly unlikely." N.T. PCRA Hearing, 4/5/23, at 110; *id*. at 137 (maintaining even after cross-examination that it was "highly unlikely" the shooting occurred on April 22). According to Dr. Collins, a theory of death occurring on April 22 was "outside of reason." *Id*. at 113.

Attorney Berardinelli did not remember his preparation of Smith's case or whether he investigated bringing in his own expert witness on this issue but conceded that he obviously did not present one. *Id*. at 149. Despite being unaware whether he made a conscious decision to forego calling an expert witness on the issue, he admitted that attacking the Commonwealth's theory of the time of death was important for undermining the evidence

regarding when Mr. Patrick last used his cell phone. *Id*. at 148-50. Upon questioning by Brown-Camp's PCRA attorney about reaching out to Dr. Collins, he stated that he believed that he could, and did, get the answers he wanted on that issue from Dr. Chu during cross-examination. *Id*. at 156. Attorney Berardinelli further expounded upon the general pros and cons of calling his own expert witness. *Id*. at 159-61. Specifically, he noted that he generally preferred to challenge the Commonwealth's theory on cross-examination, instead of via his own expert witness, because cross-examination allows for an element of surprise that would be dispelled if the Commonwealth were instead put on notice of the content of a defense expert's report. *Id*. at 161. He concluded that the answers he elicited from Dr. Chu "gave [them] what [they] wanted in terms of when rigor occurred." *Id*.

At the conclusion of the hearing, Brown-Camp's attorney provided extensive argument on the expert witness issue, while Smith's attorney focused primarily upon the alleged prosecutorial misconduct in failing to amend the bills of information, and otherwise rested on the amended petitions filed before and after remand as to the expert witness issue. *Id*. at 230-244 (argument for Brown-Camp), 245-48 (argument for Smith).

The PCRA court again rejected the bills-of-information argument but found that the co-defendants were prejudiced by their attorneys' failures to call Dr. Collins as an expert witness at trial. *Id*. at 254. In so holding, it observed that relying on the potential results of cross-examining Dr. Chu was

- 12 -

not a substitute for investigating their own expert, and that both trial

attorneys failed to act reasonably in their preparation of attacking that issue:

> It is not the number of questions a person asks [on cross-examination] but [Attorney Berardinelli] did not remember if he consulted with an expert and if he knew that that was going to be an issue -- and clearly [Attorney] Phillips didn't consult with an expert -- but if he knew that was going to be an issue for trial and that is one he was going to argue, he didn't remember if he did his own research or if he consulted with an expert.
>
> What harm would it have done to consult with an expert? They can give you a negative expert report but then you don't even have to turn it over or you can be at least informed by the expert, so that he could have asked appropriate questions in order to make it clearer to the jury.

*Id*. at 257. Ultimately, the court orally granted the co-defendants' PCRA

petitions and ordered new trials.[7] The Commonwealth filed motions for

reconsideration, which the co-defendants responded to, but the PCRA court

did not rule upon.

## Appeals

At each co-defendant's docket, the Commonwealth timely filed a notice

of appeal within thirty days of the court orally granting the respective PCRA

petitions. The PCRA court ordered concise statements pursuant to Pa.R.A.P.

---

[7] As noted, the orders memorializing this granting of relief were not docketed until several months later, well after the instant appeals were filed. However, since "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof[,]" this procedural misstep is of no consequence. *See* Pa.R.A.P. 905(a)(5).

- 13 -

1925(b).[8]  The Commonwealth filed two Rule 1925(b) statements claiming that the court erred in granting relief as to each defendant.  The PCRA court issued responsive Rule 1925(a) opinions in support of its orders granting the co-defendants new trials.

In this Court, the Commonwealth presents a single issue for our consideration in Brown-Camp's case:  "Did the lower court err by granting post-conviction relief on grounds of ineffective assistance of trial counsel for not retaining a forensic pathologist, where [Brown-Camp] failed to show that he was prejudiced by the omission?"  Commonwealth's brief (Brown-Camp) at 4 (capitalization altered).  In Smith's case, the Commonwealth likewise presents a single question:  "Did the lower court err by granting post-

---

[8] We remind the court that regardless of how familiar the litigants are with the appellate process, the court is obligated to include within its order:

> (i) the number of days after the date of entry of the judge's order within which the appellant must file and serve the Statement;
>
> (ii) that the Statement shall be filed of record;
>
> (iii) that the Statement shall be served on the judge pursuant to paragraph (b)(1) and both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement.  In addition, the judge may provide an email, facsimile, or other alternative means for the appellant to serve the Statement on the judge; and
>
> (iv) that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived.

Pa.R.A.P. 1925(b)(3).  In all orders, the court neglected to specify the points required in Rule 1925(b)(3)(ii) and (iii).

conviction relief on grounds of ineffective assistance of trial counsel for not retaining a forensic pathologist, where [Smith] was not prejudiced by the omission and counsel had a reasonable basis for not retaining a pathologist?"[9] Commonwealth's brief (Smith) at 4.

We begin with a discussion of the applicable legal principles. "When reviewing an order granting PCRA relief, we must determine whether the decision of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Rivera***, 154 A.3d 370, 377 (Pa.Super. 2017) (*en banc*) (cleaned up). This Court "will not disturb the findings of the PCRA court unless those findings have no support in the certified record." ***Id***. (cleaned up).

Here, the PCRA granted relief because it determined that each co-defendant had established that his trial attorney was ineffective for failing to call Dr. Collins as an expert at trial. In every ineffectiveness claim, a petitioner must "rebut the presumption that counsel rendered effective assistance and prove, by a preponderance of the evidence, that (1) the claim has arguable merit, (2) counsel's action or inaction was not based upon a reasonable trial strategy and (3) petitioner suffered prejudice because of counsel's act or omission." ***Commonwealth v. Williams***, 141 A.3d 440, 454 (Pa. 2016) (cleaned up). This three-pronged test was "originally established by the

_____

[9] Although framed as one issue, it is clear that the Commonwealth has presented two distinct claims in Smith's case, one attacking the prejudice prong and one the reasonable basis prong.

United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668 (1984), and adopted by Pennsylvania appellate courts[.]" **Commonwealth v. Wantz**, 84 A.3d 324, 331 (Pa.Super. 2014) (cleaned up). Failing to satisfy any prong of the **Strickland** test is fatal to the ineffectiveness claim. **See Commonwealth v. Thomas**, 323 A.3d 611, 621 (Pa. 2024).

Where the ineffectiveness claim is premised upon counsel's failure to call an expert witness, our Supreme Court has explained the particular modification of these three prongs thusly:

> To satisfy the "arguable merit" prong for a claim of ineffectiveness based upon trial counsel's failure to call an expert witness, the petitioner must prove that an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness[,] and the defendant was prejudiced by the absence of the testimony. Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense.
>
> . . . .
>
> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest. . . . [T]his cannot be a hindsight evaluation of counsel's performance, but requires an examination of whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect the defendant's interests. Our evaluation of counsel's performance is highly deferential.
>
> . . . .

Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony that was presented by the prosecution. Thus, the question becomes whether or not defense counsel effectively cross-examined the Commonwealth's expert witness.

. . . .

Turning to the prejudice determination, the question is whether there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different.

**Williams**, 141 A.3d at 460, 463-465 (cleaned up).

To summarize, there are two prejudice questions a PCRA petitioner must prove to sustain this type of ineffectiveness claim. As in every case alleging ineffectiveness, a petitioner must establish **Strickland** prejudice, *i.e.*, a "reasonable probability" that the result of the proceeding would have been different had counsel called the witness. **Id**. at 465. Additionally, as part of the arguable merit prong, a petitioner must show that the testimony would be helpful.[10]

_____

[10] We acknowledge that this Court has previously interpreted these prejudice tests as coterminous:

Whether an uncalled witness's testimony would have been "beneficial" or "helpful" to the defense depends ultimately upon whether it would have created a reasonable probability of a different outcome at trial. In turn, when an uncalled witness's testimony would have created a reasonable probability of a different outcome [at] trial, the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. In our view, the . . . use of the terms "beneficial" and

*(Footnote Continued Next Page)*

In Brown-Camp's case, we remanded solely on the **Strickland** prejudice prong because the PCRA court had initially found only that aspect lacking. With this issue back before us, the Commonwealth now argues that the PCRA court improperly applied the prejudice test from the arguable merit prong as modified by the Court in **Williams** instead of the standard utilized set forth by **Strickland**. **See** Commonwealth's brief (Brown-Camp) at 13.

It raises the same issue in Smith's case, and additionally alleges that the PCRA court erred in determining that Smith proved **Strickland** prejudice because the proposed testimony did not disprove the Commonwealth's theory of when the victim died and, even if the jury believed Dr. Collins's testimony about the date of death, Smith still admitted to more than one person that he

_____

"helpful" was intended merely to be explanatory of the application of the **Strickland** prejudice requirement in the specific context of a missing witness claim, and not intended to create a new (lesser) legal standard[.]

**Commonwealth v. Wantz**, 84 A.3d 324, 333 (Pa.Super. 2014) (cleaned up). In other words, we found that the defendant had to prove **Strickland** prejudice and that the "helpful" inquiry only modified the test insofar as to what **Strickland** prejudice would look like in an instance where a defense attorney failed to call a witness. Notably, when we decided **Wantz**, our Supreme Court had been modifying the **Strickland** prejudice prong with the five-part test employed when an attorney was accused of failing to call a witness. Thereafter, and as set forth hereinabove, the High Court in **Williams** instead modified the **Strickland** arguable merit prong with the five-part test. Therefore, it placed the "helpful" prejudice question from the five-part test separate from the **Strickland** prejudice standard. We need not decide whether the "helpful" prejudice test, when modifying the **Strickland** arguable merit prong, rises to the level of **Strickland** prejudice because, as will be discussed at length *infra*, the record in these cases reveals that the PCRA court did not apply the requisite **Strickland** test in assessing prejudice.

killed the victim. *See* Commonwealth's brief (Smith) at 18-22 (emphasis in original). The Commonwealth also challenges the PCRA court's lack of a reasonable-basis finding in Smith's case. It assails the court's conflation of the co-defendants' cases and insists that the PCRA court never considered this prong for Smith. *Id*. at 23-24.

The PCRA court did not author an opinion to accompany its oral order granting relief, and it did not clearly articulate the prejudice test it was using when discussing its findings on the record. Thereafter, in its Rule 1925(a) opinions, the PCRA court framed its prejudice analyses within the context of prejudice as required for the arguable merit prong when the assertion relates to counsel's failure to call a witness. *See* PCRA Court Opinion (Smith), 9/19/23, at 8-9; PCRA Court Opinion (Brown-Camp), 9/15/23, at 8. It also incorrectly declined to address the reasonable basis prong in Smith's case because it stated that we remanded solely for the prejudice prong. *See* PCRA Court Opinion (Smith), 9/19/23, at 9. Therefore, we agree that the PCRA court utilized the wrong standard in assessing *Strickland* prejudice in each case and improperly ignored the reasonable basis prong in its Rule 1925(a) opinion in Smith's case. However, these mistakes are not fatal if it is clear from the record that it nonetheless utilized the proper standards when granting relief. We begin our analysis in that regard with Brown-Camp's case.

A. Brown-Camp's Case

Since we previously remanded solely on the prejudice prong in Brown-Camp's case, the only question before us is whether the PCRA court erred in

finding that Brown-Camp sustained his burden of proving **Strickland** prejudice resulting from Attorney Phillips's failure to call Dr. Collins. When the PCRA court announced its decision from the bench, it noted that it was irrelevant whether it personally believed in the truth of the issue since it was privy to evidence beyond what a jury would be able to see. **See** N.T. PCRA Hearing, 4/5/23, at 256. Instead, the court highlighted that "[t]here was a palpable issue regarding the time of death" and neither trial attorney bothered to consult with an expert despite the minimal risk in doing so. **Id**. at 256-57. The court concluded:

> I have reviewed the case law involved in this and the [d]efense's filings and the [c]ourt finds that based on both the experts, which applies to both [d]efendants, and I didn't really have to find anything else once I find that the failure to call an expert prejudiced the defendants, then I am going to rule that a new trial be ordered.

**Id**. at 258. Stated simply, it did not elucidate upon which prejudice standard it applied.

In its Rule 1925(a) opinion, the PCRA court began its analysis by stating that Brown-Camp had to prove the absence of the testimony "was so prejudicial that he was denied a fair trial[,]" but then went on to explain that this meant he had to demonstrate how the missing "testimony would have been beneficial under the circumstances of the case" and how it "would have been helpful to the defense." PCRA Court Opinion (Brown-Camp), 9/15/23, at 8 (citations omitted). The court set forth its prejudice finding as follows:

> [T]he experts' testimony regarding the calculation for the time of death would have been helpful to the defense since the jurors would have been provided information to contradict the Commonwealth's allegation of the time of death, which was a critical fact for the defense.
>
> Considering that cellphone and other circumstantial evidence was presented to establish that [Brown-Camp] was with [Mr. Patrick] when the murder occurred on April 22, 2013, evidence of a later date of death, could have been beneficial under the circumstances of this case.

*Id*. (cleaned up).

The Rule 1925(a) opinion demonstrates accordingly that the PCRA court was solely focused on whether the evidence was helpful and beneficial.[11] Thus, our review of the certified record reveals that the PCRA court improperly imported the lower-threshold prejudice question from the arguable merit prong for this type of claim into its *Strickland* prejudice analysis. In doing so, it failed to decide "whether there is a reasonable probability that, but for trial counsel's [failure to call Dr. Collins], the result of the [trial] would have been different." *Williams*, 141 A.3d at 465 (cleaned up). Therefore, "the PCRA court has not directly addressed the salient inquiry" of whether Brown-Camp established the prejudice prong of the *Strickland* ineffectiveness test. *See Commonwealth v. Weiss*, 986 A.2d 808, 816 (Pa. 2009).

_____

[11] Since the PCRA court did not divulge the parameters of its prejudice analysis until it entered the Rule 1925(a) opinion, we decline Brown-Camp's invitation to find that the Commonwealth waived this issue by failing to preserve it in the PCRA court or in its Rule 1925(b) statement. *See* Brown-Camp's brief at 10.

Based on the foregoing, we vacate the PCRA court's order as to Brown-Camp and remand for it to apply the **Strickland** prejudice question to the evidence presented at the April 5, 2023 hearing. **Id**. (remanding for the PCRA court to apply the correct legal standard to the prejudice inquiry for a claim that the Commonwealth withheld exculpatory evidence). To reiterate, the question before the PCRA court on remand is "whether there is a reasonable probability that, but for [Attorney Phillips's failure to call Dr. Collins], the result of [Brown-Camp's trial] would have been different." **Williams**, 141 A.3d at 465 (cleaned up). The court shall put down in writing this prejudice analysis in a final written order either granting or denying relief on this claim.

### B. Smith's Case

Our review of the certified record as it pertains to the PCRA court's analysis of the **Strickland** prejudice prong for Smith is practically identical to that detailed above for Brown-Camp.[12] **See** PCRA Court Opinion (Smith), 9/19/23, at 8. Therefore, we need not rehash it here as we apply the same analysis detailed above in Brown-Camp's case. This does not end our inquiry into the propriety of the order granting relief in Smith's case, however, because the Commonwealth also attacks the PCRA court's analysis of the reasonable basis prong in this case. **See Thomas**, 323 A.3d at 621 ("The failure to satisfy any one of these criteria is fatal to the claim." (cleaned up)).

_____

[12] For the same reasons as enunciated in the preceding footnote, we decline Smith's invitation to find this issue waived. **See** Smith's brief at 12.

First, the Commonwealth assails the court's decision not to provide any analysis regarding this prong in its Rule 1925(a) opinion. As noted, we did not limit the scope of Smith's remand because we sent it back for the filing of an amended PCRA petition through new counsel, wherein Smith could re-raise any original claims along with any alleging prior PCRA counsel's ineffectiveness. The record bears out that the PCRA court intrinsically understood at the time of the evidentiary hearing that Smith needed to prove the reasonable basis prong on this ineffectiveness claim, as it not only permitted Attorney Berardinelli to testify about his decision to not call Dr. Collins, but also analyzed the reasonableness of that strategy, as recounted *supra*.

Although the PCRA court incorrectly stated in its Rule 1925(a) opinion that the reasonable basis prong was not before it and therefore would not be addressed, the court clearly determined, at the time it granted relief, that Smith had proved that Attorney Berardinelli's failure to investigate or call Dr. Collins was not "reasonably designed to effectuate [his] interest[.]" **Williams**, 141 A.3d at 463 (cleaned up). Accordingly, we reject the Commonwealth's argument that the PCRA court failed to consider the reasonable basis prong before granting relief.

Alternatively, the Commonwealth contends that even if the court did consider this prong, the evidence proved that Attorney Berardinelli acted reasonably in deciding not to retain an expert so he could catch the Commonwealth by surprise during cross-examination regarding the rigor

mortis process. *See* Commonwealth's brief at 23-24. This argument mischaracterizes the testimony at the PCRA hearing, and the PCRA court's findings based thereon. Attorney Berardinelli attested that, while the time of death was an important issue, he could not remember if he considered calling an expert or if he made an explicit determination not to call one. Rather, he could only concede that neither co-defendant called an expert to testify about when Mr. Patrick died. When pressed, Attorney Berardinelli did not explain any strategic choice, but instead suggested that Smith was not prejudiced because he believed that he effectively cross-examined Dr. Chu regarding the longevity of rigor mortis. His hypothetical analysis in support of cross-examination over calling a defense expert was offered only in hindsight.

The PCRA court criticized Attorney Berardinelli for not being able to remember if he consulted with an expert on a forensic issue that he knew was critical to defending Smith's case and highlighted that no harm could have come from making inquiries into whether to call an expert about Mr. Patrick's time of death. *See* N.T. PCRA Hearing, 4/5/23, at 257. In other words, the court found that Attorney Berardinelli did not have a reasonable basis for failing to call Dr. Collins. The certified record supports this determination, and we discern no error. As such, we have no cause to disturb the PCRA court's conclusion that Smith met his burden of proving this prong.

Nonetheless, in light of the foregoing error in construing the ***Strickland*** prejudice prong, we vacate the order granting relief to Smith and remand for the PCRA court to assess "whether there is a reasonable probability that, but

for [Attorney Berardinelli's failure to call Dr. Collins], the result of [Smith's trial] would have been different." ***Williams***, 141 A.3d at 465 (cleaned up). Again, as in Brown-Camp's case, we task the PCRA court with committing to paper its analysis in that regard.

## Conclusion

To summarize, we vacate both orders granting relief to the co-defendants and remand for the PCRA court to analyze, under the proper ***Strickland*** standard, whether Brown-Camp and Smith proved prejudice on their claims regarding ineffective assistance of trial counsel for not calling an expert witness on the forensic science surrounding Mr. Patrick's time of death. These analyses shall be recorded in the final orders disposing of their PCRA claims.

Cross-appeal discontinued. Orders vacated. Cases remanded with instructions. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/14/2025